## HARRY P. PRATT
### v.
## JAMES M. MAREAN.

*Patents—Agreement between Separate Owners of Letters-Patent—Sale of Patented Machine—Bill to Enjoin Use by Vendee.*

1. When a patented machine passes from the patentee to a purchaser, it is no longer within the limits of the monopoly.
2. An agreement between separate owners of letters-patent, covering a machine, not to use the patented machine in each other's territory, is not binding upon a purchaser of a machine from either.

(Opinion filed March 28, 1888.)

IN ERROR to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

This writ of error is prosecuted to review the decree of the court below in sustaining a demurrer to the complainant's bill and dismissing the same for want of equity. The bill was filed by the plaintiff in error to enjoin the use of certain knit-

Pratt v. Marean.

ting machines containing improvements covered by letters-patent.

It appears that in 1884, B. P. Pratt and Edwin C. Walker were partners and joint owners of the patent covering the improvement in the machines. They also owned twelve machines containing the patented improvement. Some difference arose between them, and a bill was filed to dissolve the partnership. The suit was practically terminated by an agreement between the parties that Walker might take and retain the exclusive possession of the said twelve machines as well as other property, and remove the same beyond the jurisdiction of the court, and use and dispose of the same as to him should seem fit, he to account therefor as between the parties to the suit, being charged with the full value thereof. "That the interests of said Pratt & Walker in the letters-patent shall be equally divided by deeds of assignment, said Walker to choose a State or Territory and said Pratt to choose a State or Territory alternately, until the whole United States is divided, and said Walker and said Pratt, or their respective assignees in the territory assigned to each, shall have exclusive rights therein under said patent, free from all interference by the other, to manufacture, or license to be manufactured, goods under said patented invention."

Wisconsin fell to Walker in the division of States, and he removed the patented machines to Milwaukee and sold them to one Cameron, who brought them to Chicago. Defendant in error succeeded to Cameron's interest in, and control over the machines, and has continued to operate them in Chicago in producing the knit goods which they were constructed to manufacture.

Pratt took Illinois, in the division of States between himself and Walker, and Walker conveyed to him all his interest in the patent for the State of Illinois, and said B. P. Pratt conveyed to plaintiff in error the entire patent for Illinois. Plaintiff in error sought by his bill to enjoin defendant from manufacturing said knit goods under said patent invention in the State of Illinois.

The court denied the relief prayed for and dismissed the bill.

Messrs. LYMAN M. PAINE and C. C. & C. L. BONNEY, for plaintiff in error.

While it may be true that ordinarily the purchaser from a patentee, or from a licensee duly authorized, takes the machine free from all claim for royalty or for damages for infringement, and with full and perfect right to use the machine anywhere, or sell it anywhere, still that is not the position of defendant in error in this case.

After the agreement between Walker and Pratt had been made a part of the records of the Circuit Court of Cook County, and after the same agreement had been embodied in the assignment from Walker to Pratt, and had been made a part of the records of the Patent Office, it is absolutely certain that defendant in error could not then purchase a machine from Walker in Milwaukee, and by so doing gain any right whatever to sell or use such machine in Chicago. It is admitted in this record that the purchase of the knitting machines by Cameron, and the use by defendant in error, were made with full knowledge of the rights of plaintiff in error, as assignee of B. P. Pratt.

The sale was not unrestricted. Walker took the machines under an express limitation that they should be used only in such territory as should fall to him in a division of States. That limitation was made known to the world by filing in the Circuit Court of Cook County, and also in the Patent Office in Washington. It was a burden upon the title of Walker in the machines, and the rule of *caveat emptor* applies with full force to the present ownership of defendant in error. A few knitting machines can supply the demand of the world, while each family is a possible purchaser of a sewing machine. The enjoyment of the monopoly in sewing machines is derived from the restricted sale of machines, while in knitting machines the enjoyment comes through the restricted use of machines.

Walker was to have the machinery of the firm at its cost price, including the machines in question, to use if he chose, or to dispose of if he saw fit. But when the patent under which those machines were built was equally divided, unquestionably the freedom to use the machines containing the patent

was restricted to such States as should fall to Walker in the equal division. The words mean no more than that such machines should be free from all future claims for royalty by Pratt, and that Walker was to be accountable in the partnership settlement for their cost only, and not at all for their use, if he continued to use them, nor for their selling price, if he should conclude to sell them. Such construction gives effect to all the provisions of the agreement, and thus the equal division of the patent was not a mere trap to ensnare Pratt into a partnership settlement.

Messrs. Merriam & Whipple, for defendant in error.

In Adams v. Burke, 17 Wall. 453, the United States Supreme Court, defining the rights under letters-patent for inventions, say: "The right to manufacture, the right to sell and the right to use are each substantive rights, and may be granted or conferred separately by the patentee. But in the essential nature of things, when the patentee or person having his rights sells a machine or instrument whose sole value is in its use, he receives the consideration for its use, and he parts with the right to restrict that use."

Pratt did this when he disposed of his interest in these machines to Walker, and received his pay for them. The predicament is not changed because he sold merely for the cost price.

In the Paper Bag Machine Cases, 105 United States, 771, the same court hold: "Power to sell the machine and transfer the accompanying right of use is an incident of unrestricted ownership." See, also, Birdsell v. Shaliol, 112 U. S. 478. .

A grant of an exclusive right to make, use and sell a patented invention within a particular part of the United States, confers the right to use anywhere within the United States, those specimens of that invention which are made and sold under the grant and within the territory covered thereby. Adams v. Burke, 17 Wall. 453; McKay v. Wooster, 3 Off. Gaz. 441; Roosevelt v. Western Electric Co., 20 Fed. Rep. 724; Holliday v. Matheson, 24 Fed. Rep. 185.

Moran, P. J.    Walker, by the agreement with Pratt, obtained a complete title to the patented machines, and while, because of the terms of his contract, he might be prevented from operating those machines or any other made under the same patent in the manufacture of goods in the State of Illinois, it by no means follows that persons to whom he sold said machines were not at liberty to use them for the purpose for which they were constructed anywhere within the United States.

When a patented machine passes from the patentee to the hands of a purchaser, it is no longer within the limits of the monopoly.    It becomes the purchaser's private property, and he must be held by the purchase to have obtained the right to use such machine in the most unrestricted sense.    Bloomer v. McQuewan, 14 How. 539; Adams v. Burke, 17 Wall. 455.

The purchase of the machines by Cameron from Walker was a lawful purchase, and Cameron became the lawful owner of them, for he traced his title to the machines directly from said owners of the patent, and being the lawful owner of them, he or his vendee could remove them to any State, and could use them wherever he desired.

The agreement of Walker not to manufacture the knit goods in Illinois, was, if binding, only binding on him as his personal contract.   Such contract did not in any manner attach itself to the machines, or run with the property in them as a covenant against their being used in Illinois, which could be held binding on Walker's vendee.   The right of plaintiff in error to restrain the manufacture of knit goods does not depend on the patent.    The patent is not upon the goods, but upon the machine.    Hence, every one who owns a machine may manufacture the knit goods in Illinois, provided he has not, by contract, agreed not to do so.

It is very clear that defendant in error never made such an agreement, and we are wholly at a loss for any reason for enforcing Walker's agreement against him.

The judgment of the Circuit Court is not erroneous, and must therefore be affirmed.

*Judgment affirmed.*